[Civ. No. 16329. First Dist., Div. One. Apr. 19, 1955.]

ROSE NATHANSON, as Administratrix, etc., Plaintiff and Appellant, v. MAY MURPHY et al., Defendants and Appellants.

Morgan V. Spicer and H. R. Whiting for Plaintiff and Appellant.

William Klein and Toland C. McGettigan for Defendants and Appellants.

BRAY, J.—In an action for deceit and false representation plaintiff recovered judgment of $5,000 and interest from June 11, 1947. Thereafter the trial court made an "Order Modifying Findings of Fact and Conclusions of Law Heretofore Signed" and an "Order Modifying Judgment." Defendants appeal from the judgment.* Plaintiff appeals from the two orders.

*Defendants purport to appeal also from an order denying a new trial. That there is no appeal from such an order has been held so many times as not to require citation of authorities.

## Questions Presented
### Defendants' Appeal

I. Sufficiency of the evidence and of allegations of the complaint.

II. Was Joseph Nathanson a real party in interest?

III. The correct measure of damage.

IV. Error in denying admission of evidence concerning claimed conversion of defendants' property by Nathanson.

### Plaintiff's Appeal

Power of court to change findings and judgment.

I. *Sufficiency of the Evidence and of Allegations of the Complaint.*

Defendants contend that neither the facts as alleged in the complaint, found by the court nor shown by the evidence, made out a ground for recovery. As the evidence supports the allegations of the complaint it is unnecessary to consider the pleading separately but only to determine whether the facts as found entitle plaintiff to the judgment.

Defendant May Murphy is the mother of defendant Barbara Baglietto. They owned a ranch in the counties of Tehama and Shasta.† In 1946 Joseph Nathanson‡ approached Mrs. Murphy in regard to purchasing the ranch, stating that he was interested in promoting a corporation to take it over. She was interested in selling and told him the ranch contained 960 acres. A corporation was formed called the Community Cooperative Development Company. The corporation applied to the Corporation Commissioner for a permit to sell stock to make "a down payment on a going stock ranch and for the acquisition of an auto court." It stated that a number of ranches were under consideration but that it was the present purpose of the directors to acquire a ranch of more than 900 acres in the vicinity of Cottonwood (defendants' ranch). In April, 1947, Nathanson persuaded Mrs. Murphy to go with him to the office of Mr. Penaat, a director of the company, and an attorney. There, they went over a proposed memorandum for the purchase of the property by the corporation. This required a payment of $5,000 by June 9th at which time the owners were to deed the property to the corporation

---

†All of the negotiations as to the sale of the ranch were with defendant Murphy. She, however, admittedly had authority to represent and bind the daughter.

‡He died prior to trial. His deposition, previously taken, was used at the trial.

and receive back a note for the balance of the purchase price secured by a deed of trust on the property. In the early part of June, Nathanson from his own money paid defendant the $5,000. Defendants executed the deed to the corporation and the corporation executed the note and deed of trust. The property was described by metes and bounds without reference to acreage. The next day the permit to sell stock was issued, referring to the ranch to be purchased as containing 960 acres. The corporation then solicited sales of stock for approximately two months, when it stopped doing so because it discovered that the ranch contained not more than 770 acres. The tax bill for the period July 1, 1947, to June 3, 1948, which became a lien in March, 1947, showed the acreage as 757 acres. Negotiations were had with Mrs. Murphy to reduce the purchase price because of the discrepancy in acreage. These came to naught and the $5,000 was never restored. The Corporation Commissioner finally terminated the permit to sell stock. The corporation has no assets and in 1948 defendants foreclosed the deed of trust. Thereafter Nathanson sued for the recovery of $5,000 damages plus additional damages of $10,000 for loss of commissions on sale of corporation stock, $5,000 for the reasonable value of his services, $2,500 for the reasonable value of time expended, and $500 for expenses incurred, all based on the charge of misrepresenting the acreage.

The court found that defendants knew that Nathanson was interested in organizing and promoting the corporation to purchase the ranch; that the corporation permit was granted to purchase defendants' "960 acre ranch"; that after discovering defendants' false representations as to acreage the corporation could not lawfully issue its stock; that Nathanson paid $5,000 of his own money as partial consideration for the conveyance by defendants to the corporation; that defendants knew said representations to be untrue and made them with intent to deceive Nathanson and to induce him to pay said sum to them; that the representations were false and untrue; that the ranch only contains 763 acres; that Nathanson did not know the representations to be false, but believed and relied upon them and would not have paid the $5,000 had he known the truth; that because the corporation could not issue its stock, it could not fulfill the contract of purchase; that the corporation has no assets from which to repay Nathanson.

Both as to pleading and as to evidence all the facts

necessary to establish a case of deceit and false representation appear here. The elements required are succinctly set forth in *Hobart* v. *Hobart Estate Co.*, 26 Cal.2d 412, 422 [159 P.2d 958]: "In general, to establish a cause of action for fraud or deceit plaintiff must prove that a material representation was made; that it was false; that defendants knew it to be untrue or did not have sufficient knowledge to warrant a belief that it was true; that it was made with an intent to induce plaintiff to act in reliance thereon; that plaintiff reasonably believed it to be true; that it was relied on by plaintiff; and that plaintiff suffered damage thereby."

1. A material representation was made. Nathanson testified Mrs. Murphy told him the ranch contained 960 acres. Defendants owned a real estate broker's business. Under its name on two occasions newspapers advertised the property as containing 950 acres and on two occasions as 940 acres. The advertisements were seen by Nathanson. Mrs. Murphy gave Nathanson a description of the ranch on her firm's stationery "About 950 acres more or less . . ." Mrs. Murphy stated to Nathanson and Penaat that the acreage was 950. A letter to the Corporation Commissioner prepared by Penaat, signed by Mrs. Murphy and seen by Nathanson, described the ranch as containing 900 acres. The memorandum of sale reviewed by Nathanson and Mrs. Murphy referred to the ranch as containing 950 acres. Misrepresentation of acreage may be a material fact. (*Morey* v. *Bovee,* 218 Cal. 780 [25 P.2d 2] (18 acres of orange trees represented as 23 acres); *Quarg* v. *Scher,* 136 Cal. 406 [69 P. 96] (23½ acres represented as 40); *Mosher* v. *Lack,* 41 Cal.App. 23 [181 P. 813] (55.64 acres represented as 80); *Dohrman* v. *J. B. Roof, Inc.*, 108 Cal.App. 456 [291 P. 879] (90-foot lot represented as 100).) Here it was material.

 2. The representations were false. There can be no question under the evidence that the ranch contained no more than 765 acres.

3. Defendants knew the representations to be untrue or did not have sufficient knowledge to warrant a belief that they were true. There is no direct evidence that defendants knew the exact acreage. However, the evidence shows that defendants never had the ranch surveyed to determine its size. They introduced no evidence as to what they based their representations on. Therefore they did not have sufficient knowledge to warrant a belief that they had 950 acres.

A case very much in point is *Gagne* v. *Bertran* (1954),

43 Cal.2d 481 [275 P.2d 15]. It was an action for deceit against a test hole driller who was not a party to the contract of sale but who represented to the plaintiff the amount of fill on the property, as a result of which representation the plaintiff entered into the contract. ''To be actionable deceit, the representation need not be made with knowledge of actual falsity, but need only be an 'assertion, as a fact, of that which is not true, by one who has no reasonable ground for believing it to be true' [citations] and made 'with intent to induce [the recipient] to alter his position to his injury or his risk . . .' [citations].'' (Pp. 487-488.)

4. Made with intent to induce plaintiff to rely thereon. Defendants contend that the facts that some of the representations were made a year prior to the transaction, that there were six other incorporators besides Nathanson, that the sale was to the corporation and that the down payment was to be paid by the corporation from proceeds of stock sales, negative any intent to defraud Nathanson. ■ There is no legal requirement that to constitute grounds for recovery the misrepresentations be made at any particular moment during the negotiations. Here the transaction was the product of months of negotiations. ■ The representations and the formation of the corporation were steps that finally consummated in the sale. Defendants knew that Nathanson was vitally interested in the formation of the corporation and the purchase of the ranch. At Penaat's office, Mrs. Murphy inquired from where the down payment was to come. Nathanson explained that he was going to put it up. ''She was satisfied when she learned that the $5,000.00 that was offered was definitely available and would not have to be raised through the sale of stock.'' ■ An action for deceit does not require privity of contract. Here the representations were made directly to Nathanson to induce him to pay the $5,000 to defendants for the benefit of the corporation.

Assuming, however, the representations were made directly to the corporation and merely indirectly to Nathanson, Mrs. Murphy knew that Nathanson would act upon them. Therefore, the representations are actionable. ■ ''Defendant's intent to induce plaintiffs to alter their position can be inferred from the fact that he made the representation with knowledge that plaintiff would act in reliance thereon.'' (*Gagne* v. *Bertran, supra,* 43 Cal.2d 481, 488; see also *Crystal Pier Amusement Co.* v. *Cannan,* 219 Cal. 184 [25 P.2d 839, 91 A.L.R. 1357].) ■ Moreover, Mrs. Murphy knew that it was

intended that the corporation stock would be sold to investors generally on the representation that the ranch acreage was as stated by her. Therefore, it must be presumed that she intended such a class of persons including Nathanson to act in reliance on her representations. "One who practices a deceit with intent to defraud the public, or a particular class of persons, is deemed to have intended to defraud every individual in that class, who is actually misled by the deceit." (Civ. Code, § 1711.)

Moreover, the intent need not be to defraud, but merely to cause another to alter his position to his risk. Section 1709, Civil Code, provides: "One who willfully deceives another with intent to induce him to alter his position to his injury or risk, is liable for any damage which he thereby suffers."

5. Plaintiff reasonably believed the representations to be true. Defendants, after stating "we admit the majority of California cases seem to be the contrary" refer to the rule cited in 12 Ruling Case Law 372 (citing *Champion* v. *Woods*, 79 Cal. 17 [21 P. 534, 12 Am.St.Rep. 126]) to the effect that where the means of knowledge are at hand and equally available to both parties and the subject matter is alike open to their inspection, one who fails to avail himself of these opportunities will not be heard to say that he was deceived by the others' misrepresentations. That rule has never been applied in California to representations as to land quantities.

■ "As a general rule, the owner of real estate, in the absence of facts showing the contrary, is presumed to know the boundaries and area of his land, and a buyer is warranted in relying upon his representations in respect to such facts." (*Eichelberger* v. *Mills Land etc. Co.*, 9 Cal.App. 628, 634 [100 P. 117].) (See also *Hargrove* v. *Henderson*, 108 Cal. App. 667, 674 [292 P. 148]; *Younis* v. *Hart*, 59 Cal.App.2d 99, 104-105 [138 P.2d 323].) "The acreage of land is a thing that cannot be seen with the eye at a glance, but can only be ascertained with accuracy by scientific measurement, and when a vendor states to a vendee the amount of land in the tract which is the subject of the sale, such vendor will not thereafter be heard to say in a court of equity, the vendee had no right to believe him." (*Quarg* v. *Scher*, *supra*, 136 Cal. at p. 410.)

■ 6. Plaintiff relied on the representations. Nathanson so testified. The trial court believed him. We are bound by that court's determination.

The fact that Nathanson was to receive a job from the

newly formed corporation does not change the fact that his payment to defendants of the $5,000 was caused by defendants' representations. True, he expected the corporation to reimburse him. But he and defendants knew that his only possibility of reimbursement would be from sales of stock by the corporation under the permit which was issued upon the representation by the corporation, relying upon defendants' representation as to the ranch acreage.

7. Plaintiff suffered damage thereby. The corporation had no money with which to repay Nathanson. The permit under which the corporation undertook to sell stock was based upon the representation that the ranch contained 960 acres, and expressly refers to such acreage. Both Nathanson and Penaat testified that the sales of stock were stopped because of fear of violating the law when they and the corporation learned that the application to the Corporation Commissioner and the permit itself misrepresented the acreage. However, plaintiff's cause of action is based upon the fact that by defendants' actions Nathanson was induced to invest in the corporation and thereby lost his investment.

The fact that Nathanson was employed by the corporation for a while and received a salary did not minimize his damage. He was being paid for his services not for reimbursement of his investment.

II. *Real Party in Interest.*

■ Citing section 367, Code of Civil Procedure, to the effect that all actions must be prosecuted by the real party in interest, and cases to the same effect, defendants contend the corporation is the real party in interest. The representations were made to Nathanson before there was any corporation. While the idea of forming a corporation was Nathanson's, nevertheless the inducement to pay defendants the $5,000 was made to Nathanson. A case similar to ours is *Sutter* v. *General Petroleum Corp.* (1946), 28 Cal.2d 525 [170 P.2d 898, 167 A.L.R. 271]. There 27 stockholders in their own names sued third parties for fraud and deceit, based on fraudulent representations causing them to organize and invest in a corporation to purchase the defendants' property. There, as here, the defendants claimed that the injury was not to the plaintiffs but to the corporation formed by the plaintiffs. The court pointed out that (as in our case) the representations were made and the plaintiffs' actions in reliance thereon, took place before the corporation was formed. It stated that the essence of the plaintiffs' charges

was that by reason of the representations of the defendants, the plaintiffs were induced among other things to form and invest in a corporation, and that therefore, the plaintiffs had brought themselves within the rule. ". . . a stockholder may sue as an individual where he is directly and individually injured although the corporation may also have a cause of action for the same wrong. [Citations.]" (P. 530.)

III. *Measure of Damages.*

In *Sutter* v. *General Petroleum Corp., supra,* 28 Cal.2d at page 531, the court said that each plaintiff "lost his investment which was represented by the stock, and its reduction in value would be the extent of his loss. The damages all flowed from the tort of defendants." It assumed, without deciding, that section 3343, Civil Code, applied. That section provides that one defrauded in the purchase of property is entitled to recover the difference between the actual value of that with which he parted and the actual value of what he received. It held that, additionally, each plaintiff would be entitled to the reasonable value of his services in developing and operating the project which failed because of the fraud of the defendants, under both section 3333, Civil Code, which provides that for the breach of an obligation not arising from contract the measure of damages except where otherwise provided in that code is the amount which will compensate for all the detriment proximately caused thereby, and under section 1709, Civil Code, which provides that one who willfully deceives another with intent to induce him to alter his position to his injury or risk, is liable for any damage which he thereby suffers. In our case, Nathanson sought additional damages for the value of his services, etc. The court, however, held that no evidence was offered to support these claims.

In cases of fraudulent representations by a vendor to a vendee it has been held that section 3343, Civil Code, provides the measure of damages. (See *Bagdasarian* v. *Gragnon,* 31 Cal.2d 744 [192 P.2d 935] and cases there cited.) In *Gagne* v. *Bertran, supra,* 43 Cal.2d 481, which was, as heretofore explained, an action against a third party on representations which caused the plaintiffs to enter into a contract with a third party, the court said: ". . . the damages, whether for deceit or negligence, must be measured by the actual losses suffered because of the misrepresentation. (Civ. Code, §§ 1709, 3333 . . .)" (P. 490.) It then held that the

plaintiffs were entitled to the difference between the actual value of the property and the amount the plaintiffs paid for it, if any, and for any consequential damages there might be. ▮ Certainly, in our case, under either section 3333 or 1709, or both, plaintiff was entitled at least to $5,000.

Defendants' argument that Nathanson's investment in the corporation had value at the time of the fraud is answered in *Sutter* v. *General Petroleum Corp., supra,* 28 Cal.2d 525, where the court said (p. 533) : "It may be that the complaint indicates that the stock had some value at the time the representations were made and the money invested, still where the fraud consists, as it does here, of the false representations as to the condition of the steel island and the availability of the lease, the consequences of the fraud—manifestation of the injury to plaintiff—did not occur until the collapse of the steel structure and the loss of the lease. Certainly it cannot be doubted that there is a sufficient showing of injury to plaintiffs." In our case, if the stock had any value at the time of the formation of the corporation, the consequences of defendants' fraud did not arise until the discovery of the true acreage. It was then that the stock, if it had any value, became valueless and the injury to Nathanson occurred. Assuming some value to the stock originally, the language in *Feckenscher* v. *Gamble,* 12 Cal.2d 482, 500 [85 P.2d 885], is applicable here: "Although there was some equity in the property which plaintiff acquired in the trade at the time she actually acquired it, yet by reason of one of the misrepresentations made to her to the effect that the trust deed was not immediately due, she lost the entire property by a sale under the trust deed, so that it can reasonably be said that she actually received nothing of value from the transaction."

IV. *Conversion.*

▮ The corporation had possession of the ranch for a period. Nathanson acted as its manager. Defendants offered to prove the value of feed and livestock sold by Nathanson during this time.[᾿] The livestock were covered by a chattel mortgage from the corporation to defendants, made as a part of the purchase of the ranch transaction. The court refused to admit evidence thereof on the ground that no claim had been presented against the Nathanson estate, and no setoff, counterclaim or cross-complaint was pleaded. (See 23 Cal.Jur. 277, necessity for pleading a setoff, and *Reveal* v. *Stell* (1922), 56 Cal.App. 463 [205 P. 875], necessity for presenting claim

against estate on a cross-demand.) Defendants contend, however, that the purpose of the offer was not to establish a setoff but to show that Nathanson's "out of pocket" damage was less than claimed. It is not clear from the offer of proof whether defendants claim that Nathanson received the money from the alleged conversion of defendants' property personally or for the corporation. If for the corporation obviously it could not constitute a reduction of Nathanson's damages. Assuming that Nathanson received it, that fact would have to be alleged. This is not an action between vendor and purchaser, in which event the conversion of the vendor's property by the vendee would constitute a reduction of the vendee's damages. Here defendants claim that neither Nathanson nor the corporation had the right to sell the chattel mortgaged property. It is claimed the sale was contrary to the terms of the mortgage executed by the corporation. If so, Nathanson took the property expressly against the will of the mortgagee and was guilty of conversion. This would not be a minimizing of damages but would be a setoff, which would have to be pleaded. Nathanson was not a party to the contract between defendants and the corporation. His alleged action would have been a tort completely separate and apart from his transaction with defendants. *Bagdasarian* v. *Gragnon, supra,* 31 Cal.2d 744, is not in point. That was an action between vendee and vendor.

### PLAINTIFF'S CROSS-APPEAL
#### Power to Change Findings and Judgment

After judgment and after motion for new trial had been denied, the trial court made the orders amending the findings and conclusions and the judgment by striking out the provisions allowing interest from June 11, 1947, the date of the payment to defendants of the $5,000. The orders were not made pursuant to the provisions of section 473, Code of Civil Procedure; to correct clerical errors or misprision in the record; or on motion for new trial pursuant to the provisions of section 663 or 663a, Code of Civil Procedure. Section 3288, Civil Code, provides that in an action for the breach of an obligation not arising from contract and in every case of oppression, fraud or malice, interest may be given in the discretion of the *jury*. There being no jury in this case, this means the trial court, to whom discretion is left the determination of whether interest will be awarded. (*Pavlovich* v. *Neidhardt,* 128 Cal.App.2d 559, 562 [275 P.2d 836].)

The court exercised its discretion and awarded interest. ██ ". . . the rule is well settled that a judgment or order once regularly entered can be modified or vacated by the court which entered it only in the manner prescribed by statute . . ." (*Eisenberg* v. *Superior Court,* 193 Cal. 575, 581 [226 P. 617].)

The purported appeal from the order denying a new trial is dismissed. The other orders are reversed. The judgment is affirmed.

Peters, P. J., and Wood (Fred B.), J., concurred.

Defendants and appellants' petition for a hearing by the Supreme Court was denied June 16, 1955.