[Civ. No. 16731.   First Dist., Div. One.   June 18, 1956.]

JOSEPH SIMONE, Respondent, v. SAM McKEE, Appellant.

Hyman & Hyman for Appellant.

Carroll F. Jacoby and Jack Flinn for Respondent.

PETERS, P. J.—Defendant, Sam McKee, a real estate broker, appeals from an adverse judgment awarding plaintiff Joseph Simone $3,800 compensatory damages and $1,000 exemplary damages for fraud practiced by McKee in a real estate transaction. He also purports to appeal from an order granting plaintiff leave to file an amended complaint to conform to proof, and "from the failure of the Court to rule upon or grant the said defendant's motion for a new trial."

The original complaint charged a conspiracy to defraud on the part of McKee and one Genevieve Chisholm, alleging that McKee, while representing plaintiff in the sale of his San Francisco property, informed plaintiff that Chisholm had offered to purchase the property for $13,000; that such amount was the best price obtainable and that there were no other offers in excess of that amount; that such representations were false in that defendant knew that one Adelaide Clatanoff had offered to buy the property for $17,000; that the false representations were maliciously made to induce the sale of the property to Chisholm; that defendants concealed the Clatanoff offer in a conspiracy to have the property

sold to Chisholm and then resold to Clatanoff in order to gain a secret profit; that in reliance on these representations plaintiff sold the property to Chisholm for $13,000, and Chisholm resold it to Clatanoff for $17,000. At the conclusion of the trial, over McKee's objections, the trial court granted plaintiff leave to file an amended complaint to conform to proof. The amended complaint dropped Chisholm as a conspirator, and set forth a cause of action against McKee alone for fraud, alleging the fraud in substantially the same language as appears in the original complaint.

The evidence overwhelmingly supports the allegations of both complaints to the effect that McKee, while acting as a broker for plaintiff in a real estate transaction, was guilty of fraud. The evidence shows that plaintiff lived in Saratoga while the property, three flats, was located in San Francisco. McKee, a licensed real estate broker, as agent of plaintiff, collected the rents, secured insurance, and arranged for repairs to the flats. In April of 1953 plaintiff notified his San Francisco attorney, one Jacoby by name, to list the flats for sale with McKee. About May 7, 1953, Jacoby arranged for plaintiff to sign a listing agreement and authorization to sell the flats for $16,500, and delivered such authorization to McKee. Early in June, McKee telephoned Jacoby and told him that he had a cash offer of $12,500 for the property. Jacoby told McKee that the price was too low. Several days later McKee informed Jacoby that the purchaser had raised the offer to $13,000 cash, and recommended that that price be accepted. Jacoby told McKee to complete the transaction at that price. McKee then sent to Jacoby's office a deposit receipt and agreement signed by Genevieve Chisholm whereby she agreed to purchase the property for $13,000, and acknowledging a $100 deposit from her. Jacoby sent the agreement to plaintiff, who signed it on June 12th or 13th, and returned it to Jacoby on June 14th. The deed from plaintiff to a title company was executed by plaintiff on June 13th and recorded June 18th. The title company executed a deed to Chisholm on June 17th, and it, too, was recorded on the 18th.

McKee at no time informed Jacoby or plaintiff that any other offer had been made to purchase the property.

Significantly, just before the final closing of the deal, McKee told Jacoby that the purchaser wanted to affix revenue stamps on the deed indicating a purchase price of $17,000, stating that Chisholm was buying the property for specula-

tion, and that among speculators this was common practice. Jacoby refused to enter into such chicanery.

During this period, McKee had received a bona fide offer to buy the property for $17,000. Adelaide Clatanoff testified that she first visited McKee's office on May 26th and asked about the property, and one of McKee's salesmen, a Mr. Henry, showed it to her on that day and the next; that on May 28, 1953, she signed an agreement to buy the property for $17,000, and gave Henry a $100 deposit; that her offer to buy was subject to the condition that she obtain a $9,000 loan at 5 per cent; that about June 1st Henry told her that the owner's signature had not been obtained to the agreement because the owner was in the Navy and out of town; that about June 6th she talked with McKee and Henry about the proposed loan; that McKee told her a 5 per cent loan could not be secured and that a $2,000 deposit should be made; that she refused to increase her deposit until the sale had been approved by the owner; that subsequently she talked with McKee several times about the bank loan, and he finally reported that the best he could get was $8,500 at 5½ to 6 per cent; that she told him this would be acceptable if she could not do better but that she, personally, would try to negotiate the loan; that on June 16th Henry again demanded a $2,000 deposit which she again refused until the owner approved the sale; that on June 18th McKee told her he had such approval and showed it to her on the 19th; that this contract of sale was signed by Chisholm, McKee representing that Chisholm was the owner's sister; that on the 19th she deposited a $2,000 check and left it with McKee who delivered to her a new receipt and agreement of sale, tearing up the old ones; that she asked McKee not to cash the check because the money was in her savings account in which there was $14,000 on deposit, and he agreed not to cash the check until after July 1st so her right to interest would not be affected; that on July 1, 1953, Chisholm deeded the property to her and she paid the $17,000. She had secured an $8,500 loan at 5 per cent.

McKee denied most of this testimony, contending that he first met Clatanoff on June 19th and first heard of her offer on June 14th, but did not think the offer was a serious one because of the conditions attached to it in reference to the loan. He denied knowing that Clatanoff had made a deposit on the property or that she had signed a formal sales agreement on May 28, 1953. He admitted that the Chisholm offer was

the only one transmitted by him to Jacoby, and admitted telling Jacoby that the $16,500 listing price was too high. It was his story that up to July 1st he did not believe Clatanoff would close the deal.

Chisholm operated a small restaurant near McKee's office, and had, on three prior occasions, bought property from him. Chisholm testified that she borrowed the money to buy the property, and that none of it was advanced by McKee; that all McKee got out of the deal was two commissions, one of $650 and one of $850; that she bought the property as a speculation, and that when she bought it she did not know there was another buyer bidding for the property.

The salesman Henry generally corroborated his employer.

The trial court, on this evidence, found against the conspiracy allegations, exonerated Chisholm of liability, found that the allegations of the amended complaint charging McKee with fraud were true, and awarded plaintiff as against McKee $3,800 compensatory damages and $1,000 exemplary damages. McKee, thereafter, moved for a new trial, but the motion was never passed upon. After the appeal was perfected McKee died and his executor has been substituted.

■ The amended complaint charges fraud. It charges that a material representation was made; that it was false; that McKee knew it was untrue; that McKee intended to induce plaintiff to act thereon; that plaintiff believed the representation was true and acted on it to his damage. These allegations are sufficient to charge fraud. (*Hobart* v. *Hobart Estate Co.,* 26 Cal.2d 412 [159 P.2d 958]; *Nathanson* v. *Murphy,* 132 Cal.App.2d 363 [282 P.2d 174].) The trial court found these allegations to be true, and those findings, relating to a direct misrepresentation, are amply supported.

It must also be remembered that McKee was plaintiff's broker. As such, he owed plaintiff an affirmative duty of disclosure. (*Fisher* v. *Losey,* 78 Cal.App.2d 121 [177 P.2d 334].) ■ It was a breach of this duty not to disclose the Clatanoff offer. ■ Failure to disclose, under such circumstances, is equivalent to the affirmative representation that no other offer existed. (*Rattray* v. *Scudder,* 28 Cal.2d 214 [169 P.2d 371, 164 A.L.R. 1356].) These representations were obviously material, and false. ■ The evidence, already recounted, shows that McKee knew that they were untrue. The argument that McKee's conduct at most amounted to negligence and bad judgment in failing to recognize Clatanoff as a legitimate buyer is based upon McKee's and

Henry's version of the facts which were disbelieved by the trial court. McKee's main basis for claiming that he in good faith did not believe the Clatanoff offer was legitimate was that the loan demanded—$9,000 at 5 per cent—was an impossible condition. Yet Clatanoff did get an $8,500 loan at 5 per cent, and as early as June 5th there was a commitment for an $8,500 loan at 5½ or 6 per cent which Clatanoff testified she told Henry would be acceptable if she could not make a better deal. The other evidence already set forth clearly supports the challenged findings.

The other necessary findings are also supported. Appellant vigorously attacks the finding that respondent believed the representations to be true and relied upon them, urging that respondent was not called as a witness and therefore there is no evidence that respondent knew of the representations or relied thereon. It is claimed that the representations were made to Jacoby and that there is no evidence that he communicated with respondent, and that the evidence shows reliance on Jacoby and not on appellant. These contentions simply ignore the facts and the applicable law. Respondent did not live in San Francisco but in Saratoga. While he employed Jacoby as his attorney to look after his San Francisco business interests, he also employed appellant to collect rentals and to make repairs to this property. Respondent, when he decided to sell the property, directed Jacoby to arrange for the sale through appellant. After McKee had told Jacoby that he recommended the acceptance of the $13,000 offer, Jacoby conveyed the offer to respondent and told him if acceptable to sign the agreement, which he did. It is a proper inference from these facts that respondent selected appellant to act as his agent in the sale of the property and directed Jacoby to handle the details. It is clear that both respondent and Jacoby relied on appellant to find a purchaser and to recommend a price. Obviously, had either known there was another purchaser offering $17,000 for the property they would not have accepted a $13,000 offer. This is not a case where the evidence shows that respondent relied on the advice of Jacoby, because the evidence shows that Jacoby was acting simply as the intermediary between appellant and respondent.

The law is well settled that "representations made to one person with intention that they will be repeated to another and acted upon by him and which are repeated and acted upon to his injury gives the person so acting the same right to relief as if the representations had been made to him

directly." (*Strutzel* v. *Williams,* 109 Cal.App.2d 512, 515 [240 P.2d 988]; see also *Crystal Pier Amusement Co.* v. *Cannan,* 219 Cal. 184 [25 P.2d 839, 91 A.L.R. 1357].) That is this case.

Appellant purports to appeal from the order permitting the filing of the amended complaint to conform to proof. This is a nonappealable order, but it is reviewable on the appeal from the judgment.

The power of the court to grant motions for leave to amend to conform to the proof is found in section 473 of the Code of Civil Procedure. (See also §§ 469, 470, 471.) ■ Courts have discretion to allow such amendments unless the pleader attempts to set forth an entirely different set of facts by way of amendment. A wholly different cause of action cannot thus be pleaded. (*Klopstock* v. *Superior Court,* 17 Cal.2d 13 [108 P.2d 906, 135 A.L.R. 318].) ■ Of course, if new issues are pleaded, the adverse party should be given an opportunity to meet them. (*Reidy* v. *Collins,* 134 Cal.App. 713 [26 P.2d 712]; *Richter* v. *Adams,* 19 Cal.App.2d 572 [66 P.2d 226]), but if it is clear that if the adverse party has presented his full case to the court the case need not be reopened. (*Rabbit* v. *Atkinson,* 44 Cal.App.2d 752 [113 P.2d 14]; *Valencia* v. *Shell Oil Co.,* 23 Cal.2d 840 [147 P.2d 558]; *M. J. Ryan Co.* v. *Brown,* 138 Cal.App. 176 [31 P.2d 1076].)

In the instant case the original complaint, which was entitled "Complaint for Damages—Fraud" set forth charges of fraud against appellant in some detail. It joined Chisholm and charged her and appellant with conspiring to defraud respondent. The amendment to conform to proof omitted the allegations of conspiracy and simply charged appellant with fraud in language almost identical with that used in the original complaint. Because the trial court found no conspiracy, the appellant charges there was a failure to prove the only cause of action pleaded—conspiracy. The argument lacks merit. Here, it is true that in one particular—the conspiracy—there was a failure of proof. But every element of fraud against appellant was proved. Thus, the amendment, dropping the conspiracy charge and alleging a fraud action against appellant, simply changed respondent's theory—it did not change the fundamental cause of action against appellant. This the trial court had the power to do. (*Brown* v. *Klein,* 89 Cal.App. 153 [264 P. 496]; *Wennerholm* v. *Stanford Univ. Sch. of Med.,* 20 Cal.2d 713 [128 P.2d 522, 141 A.L.R. 1358].)

The contention that appellant was prejudiced when

the court allowed the amendment without reopening the case because appellant was thus precluded from cross-examining the respondent, who was not called as a witness, is not supported by the record. Early in the trial counsel stated that the respondent would not be called as a witness. The appellant made no request or demand that respondent be present. When the amendment to conform to proof was offered and the order made, appellant's counsel did not then request that the case be reopened to allow him to examine respondent or to reexamine Henry and appellant. Moreover, the evidence demonstrates that respondent knew little about the transaction, relying on information conveyed to him by Jacoby, who did testify. The record shows that the case was tried on the issue of fraud and that such issue was completely embraced within the issue of conspiracy to commit fraud. No new issue was presented by the amendment. The conspiracy issue was simply deleted. No prejudice to appellant occurred by the amendment.

The appellant noticed a motion for a new trial. The court failed to pass on the motion. Appellant purports to appeal from the "failure" of the court to rule upon and grant the motion. Under section 660 of the Code of Civil Procedure the motion for a new trial is automatically denied if not acted upon in 60 days. The denial of a new trial in civil cases is nonappealable. (*Hamasaki* v. *Flotho,* 39 Cal.2d 602 [248 P.2d 910].)

Appellant claims that the award of damages is excessive. The court awarded $3,800 compensatory damages. This was computed as follows: Obviously, there was a $4,000 differential between the price received by respondent and the price paid by Clatanoff. But had the full $17,000 been received by respondent instead of the $13,000, he would have had to pay a 5 per cent commission on the additional $4,000 or $200. Thus, he was actually damaged to the extent of $3,800. Appellant contends, however, that since respondent listed the property at $16,500, he was only damaged to the extent of $3,500 less 5 per cent, and not $4,000. He contends that the "out of pocket rule" codified in section 3343 of the Civil Code is here applicable. All of the cases cited in support of this rule are cases between a vendor and vendee. None of them involve fraud by a fiduciary. As to such cases the much broader provisions of sections 3333 and 1709 of the Civil Code are applicable. (*Gagne* v. *Bertran,* 43 Cal.2d 481 [275 P.2d

15]; *Nathanson* v. *Murphy,* 132 Cal.App.2d 363 [282 P.2d 174].)

Moreover, section 3343 provides that the defrauded person is entitled to recover "the difference between the actual value of that with which the defrauded person parted and the actual value of that which he received." "Actual value" is not the listing price. There is evidence that appellant appraised the property at $18,500. The very fact that Clatanoff offered and paid $17,000 for the property is some indication that that was the price a reasonable person in a free market was willing to pay. Thus, there was evidence of "actual value" of $17,000 or more.

The exemplary damages of $1,000 were clearly allowable under section 3294 of the Civil Code. The facts found show an aggravated case of fraud.

The fact that appellant died after judgment was entered does not affect the right to exemplary damages. ▆▆▆ While exemplary damages cannot be allowed where a defendant dies before trial (*Evans* v. *Gibson,* 220 Cal. 476 [31 P.2d 389]), the right becomes vested with the entry of judgment and the subsequent death of the defendant has no effect on the award. (*Leavitt* v. *Gibson,* 3 Cal.2d 90 [43 P.2d 1091]; see 24 Cal. L.Rev. 479; 14 Cal.Jur.2d, p. 820, § 189.)

The purported appeals from the order granting leave to file an amendment to conform to proof and from the failure of the court to rule upon or grant appellant's motion for a new trial, are dismissed; the judgment appealed from is affirmed.

Bray, J., and Wood (Fred B.), J., concurred.