297 F.2d 159
 SECURITY-FIRST NATIONAL BANK OF LOS ANGELES, as Executor of
the Will of Benjamin Harrison Sheldon, Mae Sheldon, Robert
Hohly and James G. Thompson and Flamingo Trailer
Manufacturing Corporation, Appellants,
v.
Walter A. LUTZ, Appellee.
 No. 16905.
 United States Court of Appeals Ninth Circuit.
 Oct. 26, 1961.
 
 Kirtland & Packard, by Frederick P. Backer, and Abe Mutchnik, Los Angeles, Cal., for appellant Robert Hohly.
 Hill, Farrer & Burrill, by Carl A. Stutsman, Jr., and Stanley E. Tobin, Los Angeles, Cal., for appellant James G. Thompson and Flamingo Trailer Mfg. Corp.
 Lawler, Felix & Hall, by Robert Henigson, Los Angeles, Cal., for appellant Security First Nat. Bank, as Ex'r. of Will of Ben H. Sheldon, Dec'd.
 Gerald Bridges, Los Angeles, Cal., for appellant Mae Sheldon.
 Joseph T. Enright, Norman Elliott and Bill B. Betz, Los Angeles, Cal., for appellee.
 Before BARNES and MERRILL, Circuit Judges, and SWEIGERT, District judge.
 MERRILL, Circuit Judge.
 
 
 1
 In this diversity action brought by Appellee Lutz as plaintiff, appellants attack as unsupported by the record judgments against them for conversion, fraud and negligence.
 
 
 2
 Lutz' complaints are centered upon the late Ben. H. Sheldon of Los Angeles and his business enterprise: the manufacture of house trailers. Lutz, a resident of the State of Washington, was an investor in that enterprise. Appellant bank is the executor of Sheldon's last will. Appellant Mae Sheldon is his widow. Appellant Hohly was his accountant. Appellant Flamingo is the corporation organized by Sheldon to receive the enterprise and is the present owner thereof. Appellant Thompson is the present sole owner of Flamingo's capital stock.
 
 
 3
 In 1954 Lutz invested $18,000.00 in Sheldon's venture. A partnership agreement was executed October 18, 1954, by which Sheldon and his wife became general partners with a sixty per cent interest and Lutz became a limited partner with a nine per cent interest in the partnership's earnings and assets.
 
 
 4
 Early in 1955 with the consent of Lutz as partner, the business was incorporated as the B. H. Sheldon Company, the name of the corporation subsequently being changed to that of Appellant Flamingo. By the manner in which this transformation to corporate form was carried out, the Sheldon interest was increased from sixty per cent to eighty per cent, while that of Lutz was decreased from nine per cent to 4.29 per cent. The district court found as fact that Lutz' consent to the incorporation was obtained by several material misrepresentations and concealments of fact made by Sheldon, important among which was the assurance that Lutz' interest in the corporation would remain the same as his partnership interest.
 
 
 5
 On March 3, 1956 Sheldon died and appellant bank was named executor of his last will. In April, 1956 the bank and Appellant Mae Sheldon entered into an agreement with Appellant Thompson for sale of the Sheldon stock and debentures. With approval of the probate court this agreement was executed May 8, 1956, the stock and debentures passing to Thompson for $425,000.00.
 
 
 6
 In October, 1956, Lutz filed a creditor's claim against the estate, by which he sought to recover stock and debentures representing the difference between a nine per cent interest in the corporation and the interest which he had in fact secured.[1] This claim was rejected by the executor and this action was brought by Lutz. In June, 1957, Lutz sold his corporate stock and debentures to Thompson for $23,083.35.
 
 
 7
 The present action was brought not only against the bank, as executor, but against all of the other appellants as well, charging conversion, fraud and negligence.[2]
 
 
 8
 Following trial before the court without a jury, the court, pursuant to local rules and practice, gave notice of the manner in which it proposed to enter judgment and directed that proposed findings of fact, conclusions of law and judgment be prepared in accordance therewith by Lutz. The order read in part:
 
 
 9
 'That it appearing to the Court that plaintiff has not sustained the burden of establishing, by a preponderance of the evidence, the claims of actual fraud asserted by plaintiff, but that plaintiff has fully established, by a clear preponderance of the evidence, the claims of conversion and constructive fraud and negligence asserted by plaintiff, accordingly findings of fact, conclusions of law and judgment for damages and interest and costs are ordered in favor of plaintiff as follows:'(a) Against all defendant, other than defendant Robert Hohly, for conversion;
 
 
 10
 '(b) Against defendants May Sheldon and Robert Hohly for constructive fraud; and
 
 
 11
 '(c) Against defendant Robert hohly for negligence.'
 
 
 12
 Thereafter, Lutz prepared and filed proposed findings. Also filed by Lutz, pursuant to local rules and practice, was a memorandum computing the amount of judgment to which he felt himself entitled under the proposed findings of fact and conclusions of law. By this memorandum he sought judgment in the sum of $31,566.45, computed as follows: 391.04 shares @ $44.04 per share, $17,221.40; $7,821.00 debentures @ face value; plus accrued interest on the debentures and interest at seven per cent since conversion on the amount due.
 
 
 13
 The figures of 391.04 shares and $7,821.00 in debentures represent the difference between 9% and 4.29% interest in the corporation. The value of $44.04 per share represents the value realized by the estate in its sale to Thompson on May 8, 1956, the act of conversion upon which Lutz relies.[3]
 
 
 14
 In the findings ultimately signed by the court the portion of the court's order above quoted was in substance incorporated as conclusions of law. Judgment was rendered in favor of Lutz against all appellants in the sum of $31,566.25 (the very sum proposed by Lutz less an unexplained deduction of 20 cents).
 
 Appeal of the Bank
 
 15
 The claim against the bank, as the district court noted in its findings, is not founded in fraud but in conversion. Upon this appeal the bank does not dispute the determination of liability. It disputes the award of damages.
 
 
 16
 The bank asserts that at the time of incorporation the partnership owed Sheldon for advances and for unpaid salary; that in lieu of taking cash payment from the partnership, Sheldon had compensated himself by taking additional stock in the corporation. Conceding that he was not entitled to settle the obligations owing him in this unilateral fashion and that the arrangement was thus subject to being set aside, still (the bank contends) if it is to be set aside, credit should be given him for the sums owing.
 
 
 17
 We feel that there is merit in this contention. The court found that the sum of $57,200.00 was owing to Sheldon by the partnership for advances. The partnership agreement provided that Sheldon was to receive such reasonable compensation for services as the the partners might agree upon.
 
 
 18
 In opposition to the bank's contentions, Lutz argues that under California law he is entitled, subject to the court's judgment, either to the value of the converted property or to all damages proximately caused by the conversion. Further he contends that under California law it is proper, in assessing damages, to take into consideration past and projected profits of which he has been deprived. He asserts that were such matters taken into consideration by the district court they may well have offset the sums due Sheldon.
 
 
 19
 But the value of the business reflects the prospective profits of that business. The price paid to the bank by Thompson, under recognized business practice, must have been based in part upon a capitalization of such prospective profits. What Lutz is here saying in effect is that the district court may well have felt that Thompson's rate of capitalization was inadequate and that the purchase price therefore did not truly reflect the value of the property converted. The record does not bear this out. In accordance with Lutz' own proposal, damages were computed by the court upon the value as of May 8, 1956, of the property of Lutz converted by the bank as established by the sum for which it was sold by the bank.[4]
 
 
 20
 If Lutz, then, upon equitable principles is to be permitted to avoid the consequences of his consent to incorporation, equitable consideration must be given to the rights of Sheldon, restored to him in the eyes of equity by that very avoidance. It does not appear from the findings that such consideration was given. The findings and judgment all indicate the contray.
 
 
 21
 As to the amount of the judgment for conversion, this matter must be remanded in order that the district court may give due consideration to the balancing of equities.
 
 Appeal of Flamingo
 
 22
 The judgment against Flamingo was for conversion. Flamingo denies liability and asserts error on the part of the district court in holding it liable. Liability was predicated upon the failure of Flamingo to issue to Lutz the shares and debentures to which he was entitled. It is generally held that a corporation's unjustified refusal to issue stock amounts to a conversion of the stock. See 1 Harper and James, Torts, 2.33.
 
 
 23
 Under California law, however, it would appear that this rule cannot apply to the circumstances of this case. In Morrison vs. Gold Mountain Gold Mining Company, 1877, 52 Cal. 306, it was held that an agreement among partners to form a corporation was not the agreement of the corporation and that the corporation's refusal to honor the agreement was not a conversion of the stock by the corporation. The reason behind such a holding is revealed in Baxter vs. Boston-Pacific Oil Company, 1927, 81 Cal.App. 187, 253 P. 185. There the court pointed to the danger of subjecting a corporation to the duty of interpreting executory contracts which may well require judicial evaluation.
 
 
 24
 As Flamingo points out, the rule of law for which Lutz contends is a dangerous one, for if the corporation is to be held liable for the wrongful issuance of stock innocent shareholders may suffer while the culpable party, although liable, may escape being called to account.
 
 
 25
 Lutz attempts to distinguish the Morrison case on the ground that there the transfer of partnership assets to the corporation was accomplished with the consent of all parties, while here such consent was vitiated by constructive fraud. We find no valid point of distinction. If there was constructive fraud in the instant case, there was also constructive fraud in the Morrison case.
 
 
 26
 We conclude that judgment against Flamingo must be set aside.
 
 Appeal of Thompson
 
 27
 Judgment against Thompson was for conversion. Thompson denies liability and asserts error on the part of the district court in holding him liable. Liability here was predicated upon the court's finding that Thompson was not a bona fide purchaser of the corporate securities from the estate of Sheldon.
 
 
 28
 Thompson asserts that there is no substantial evidence to support the finding that he was not a bona fide purchaser and that good faith is an adequate defense to a charge of conversion arising out of the sale of corporate securities. We agree.
 
 
 29
 Lutz is unable to cite any evidence in support of the proposition that Thompson knew of the misrepresentations which induced Lutz to consent to the creation of the corporation. Evidence cited by Lutz establishes only that Appellant Hohly, as Thompson's accountant, knew of the negotiations regarding the sale of the business and of the dissatisfaction of one of the limited partners with the change from partnership to corporate form. Beyond this there is only Lutz' speculation that Thompson was fully informed by Hohly as to the background of the venture and as to the possibility that minority shareholders could be squeezed out by the nonpayment of dividends. Such evidence and speculation is insufficient to support the finding of the district court that Thompson was not a bona fide purchaser; nor does it support the finding of the district court that actions of Sheldon and Hohly were ratified by Thompson.
 
 
 30
 Under California law a transfer of stock certificates is effective even though the transferor has no title, authority or right to possession, provided the transferee takes in good faith. California Corporations Code, 2468, 2471.
 
 
 31
 We conclude that judgment against Thompson must be set aside.
 
 Appeal of Hohly
 
 32
 Judgment against Hohly, as we have noted, was not for conversion, but was for constructive fraud and negligence. Together with all other appellants, he was held liable to Lutz in the sum of $31,566.25. Later, upon Lutz' motion, judgment was amended to provide additional recovery from Hohly in the sum of $15,000.00, exemplary damages. Hohly disputes his liability in all respects.
 
 
 33
 Constructive fraud is defined by the California Civil Code, 1573, as a breach of ducy without fraudulent intent imposed where a fiduciary relationship exists betweeen the parties. From the incorporation of Flamingo until March, 1956, Hohly served as a member of the board of directors. He was a member of the board which voted the orginal issuance of stock.
 
 
 34
 Hohly asserts that his duty as accountant was simply to audit and compile reports; that such entries as he made he made pursuant to bookkeeping entires made by others and that he acted under instructions from his superiors, the general partners and later the corporation officers; that upon every material accounting transacting of which Lutz complains, Hohly acted only upon advice from competent legal counsel.
 
 
 35
 In several respects, however, the business reports of Hohly did not reflect the truth. The district court determined that Hohly knew or should have known this and was under duty as accountant to disclose the facts to the limited partners. The court found that contributions of the Sheldons to the venture were substantially over-valued upon its books and in statements later presented to the California Commission of Corporations; that an item of over $11,000.00, which properly should have constituted partnership income, was appropriated to the Sheldon account as a capital contribution. No disclosure of these facts was made to the limited partners by Hohly, despite the request of one of them for an accounting. As director of the corporation, Hohly voted eighty per cent stock issuance to the Sheldons with knowledge of these facts.
 
 
 36
 Under these circumstances we cannot say that the standard of care and duty to inform which the district court has imposed upon Hohly as an accountant for the partnership, was unduly high. The court then was justified in concluding that but for the neglect of duty on the part of Hohly the conversion might never have been accomplished. It was not error then to subject Hohly to liability for the loss suffered by conversion.
 
 
 37
 The district court was in error, however, in adding to the judgment against Hohly the sum of $15,000.00, exemplary damages. Hohly was the only defendant subjected to this penal treatment, yet he was the only defendant not to profit by the transactions involved.
 
 
 38
 In the first place we find Lutz' position with reference to constructive fraud a somewhat inconsistent one. He has, with the aid of equity, successfully repudiated the corporation as the source of his interest in the business and is, in equity, back on the old partnership basis. Yet he insists that a fiduciary relationship existed between himself as stockholder and Hohly as director.
 
 
 39
 However, even accepting the court's findings of constructive fraud there is no sufficient basis for exemplary damages. Section 3294 of the California Civil Code provides:
 
 
 40
 'In an action for the breach of an obligation not arising from contract, where the defendant has been guilty of oppression, fraud, or malice, express or implied, the plaintiff, in addition to the actual damages, may recover damages for the sake of example and by way of punishing the defendant.'
 
 
 41
 The district court, as we have noted, determined that actual fraud was not established. There is noting in the record to show malice or oppression on the part of Hohly. In the absence of such showing, the breach of duty on the part of Hohly as director is not of such character as to bring it within the language of the California code.
 
 Appeal of Mae Sheldon
 
 42
 Judgment against Mae Sheldon was for conversion and constructive fraud. On Lutz' motion to amend findings and judgment, the district court made the additional finding that Lutz had been damaged (over the sum of $31,566.25) 'in the additional sum of $15,000.00 for his detriment suffered and the benefits and advantages obtained by the defendant Mae Sheldon as a result of her constructive fraud.'
 
 
 43
 As to this additional amount, Mae Sheldon argues that such damages are unjustified because Lutz was fully compensated for his losses by the damages awarded him for conversion.
 
 
 44
 Lutz counters with the argument that this does not take into consideration benefits which the Sheldons derived from their conduct. It does appear that Sheldon received salary and expenses from the corporation. If consent to incorporation, executed by Lutz, is to be regarded as dquitably set aside, then some question may well be raised as to the reasonable value of the services rendered by Sheldon and the amount of compensation to which he was entitled; and as to whether additional benefit was received to which the Sheldons can show no equitable right.
 
 
 45
 It is Lutz' contention that he is entitled under California law to damages, taking such matters into consideration. The cases would appear to support this contention, holding that a defrauded beneficiary is entitled to recover for more than 'out-of-pocket' losses. Simone vs. McKee, 1956, 142 Cal.App.2d 307, 315, 298 P.2d 667; Ward vs. Taggart, 1959, 51 Cal.2d 736, 741, 336 P.2d 534.
 
 
 46
 The difficulty is that there are no findings at all from which the reasonable value of the services rendered can be ascertained. Judgment against Mae Sheldon in the additional sum of $15,000.00 must be set aside and this matter remanded for further findings with reference to the reasonable value of services rendered and expenses properly incurred.
 
 
 47
 One further error is assigned by the bank which requires consideration.
 
 
 48
 In the course of discovery proceedings, the bank sought Lutz' admission of the genuineness, execution and acknowledgment of his consent to incorporation. Lutz denied that the document was genuine, executed or acknowledged in that he had no recollection of signing it. The bank then procured the services of a handwriting expert to prove that Lutz had in fact signed the instrument. This expert was present at the time of trial but was never called as witness since Lutz then admitted that the signature was his own. The consent to incorporation was offered and admitted in evidence without objection. After trial the bank moved, under Rule 37(c), F.R.C.iv.P., 28 U.S.C.A.,[5] for an order requiring Lutz to pay the bank for expenses incurred in obtaining the expert's services and for reasonable attorney fees. The motion was denied. The bank asserts that this constituted abuse of discretion.
 
 
 49
 Testimony by and on behalf of Lutz was to the effect that he had no recollection whatsoever of signing the document and was 'flabbergasted' when he first saw it long after the date it bore; that he had himself employed an expert to check its authenticity and only after an opinion from that expert was he prepared to admit that he had himself signed it; that he nevertheless denied its 'genuineness' in that it had been fraudulently procured.
 
 
 50
 This testimony the court presumably believed and found to constitute good reason for denial of the bank's motion. Under these circumstances we do not regard such a determination as constituting abuse of discretion.
 
 
 51
 Judgment of the district court is reversed and remanded with the following instructions:
 
 
 52
 1. Judgments against Appellants Flamingo Trailer Manufacturing Corporation and James G. Thompson shall be set aside and judgment shall be rendered in favor of these appellants.
 
 
 53
 2. Judgment against Appellant Robert Hohly, in the sum of $15,000.00 exemplary damages, shall be set aside.
 
 
 54
 3. Judgments against Appellants Security-First National Bank of Los Angeles, as executor, Mae Sheldon and Robert Hohly, in the sum of $31,566.25, and judgment against Mae Sheldon, in the additional sum of $15,000.00, shall be set aside subject to further proceedings in conformity with this opinion.
 
 
 
 [1]
 The claim thus filed concluded with this language:
 'That by reason of the foregoing and pursuant to the terms and provisions of said agreement of limited partnership, decedent as of the date of his death held in trust for claimant 390.98 shares of the capital stock of said B. H. Sheldon Company together with debentures in the principal sum of $6,341.45, and claimant does hereby claim from the estate of said decedent said shares and debentures as hereinbefore set forth.'
 
 
 [2]
 In the district court's findings of fact, the action is described as follows:
 'This is an action:
 '(a) As against defendant Security-First National Bank, as executor of the will of Ben H. Sheldon, deceased, for damages for the alleged conversion of certain shares and debentures of B. H. Sheldon Co., a corporation, predicated upon a creditor's claim annexed to the amended complaint as Exhibit 'B' thereto;
 '(b) As against defendants James G. Thompson and Flamingo Trailer Manufacturing Corp. for damages for the alleged conversion of the securities identified in said creditor's claim and for damages for fraud and breach of fiduciary relationship;
 '(c) As against defendant Mae Sheldon, for damages for fraud and breach of fiduciary relationship;
 '(d) As against defendant Robert Hohly, for damages for negligent malpractice as a certified public accountant and breach of fiduciary relationship.'
 
 
 [3]
 The court's findings state:
 'The defendants Security-First National Bank (as executor of the Estate of B. H. Sheldon) and James G. Thompson did, about May 8, 1956, convert 391.04 shares of the stock of Flamingo Trailer Manufacturing Corporation (formerly B. H. Sheldon Co.) and debentures of that corporation in the face amount of $7,821.00, being property plaintiff was entitled to own and possess. The Estate of B. H. Sheldon was thereby unjustly enriched in the amount of $44.04 for each such share and the face amount of the debentures, plus 7 per cent interest per annum from May 8, 1956, upon the total of these amounts, which amounts were the value of this property.'
 
 
 [4]
 The estate of Sheldon was derected to give up what the court regarded as unjust enrichment. This itself is wholly inconsistent with the proposition that (although it was a nonfranuduent converter) it should be held liable for more than that which it had itself realized
 
 
 [5]
 'If a party, after being served with a request under Rule 36 to admit the genuineness of any documents * * * serves a sworn denial thereof and if the party requesting the admissions thereafter proves the genuineness of any such document * * *, he may apply to the court for an order requiring the other party to pay him the reasonable expenses incurred in making such proof, including reasonable attorney's fees. Unless the court finds that there were good reasons for the denial or that the admissions sought were of no substantial importance, the order shall be made.'