[Civ. No. 23992. Second Dist., Div. Three. Apr. 25, 1960.]

LELA FABARES, Appellant, v. ABE BENJAMIN et al., Respondents.

[Civ. No. 23993. Second Dist., Div. Three. Apr. 25, 1960.]

ABE BENJAMIN, Respondent, v. LELA FABARES, Appellant.

Dryer, Hails, Burris & Lagerlof, Joseph J. Burris, H. Melvin Swift, Jr., and John F. Bradley for Appellant.

Voorhees, Stewart & Voorhees and Malcolm E. Stewart for Respondents.

SHINN, P. J.—Lela Fabares owned three parcels of unimproved acreage in Lancaster. In settlement of pending litigation she sold Parcel Number 1 to Abe Benjamin for $116,799, $15,000 in cash and the balance of $101,799 represented by Benjamin's note and trust deed dated February 13, 1956, and due in two years. By recorded written agreement, in consideration of $10,000 cash paid, she gave him successive options to purchase the remaining parcels, the first option (on Parcel 2) to be exercised within two years of the close of the escrow for the sale of Parcel Number 1. We have set forth in a footnote the material provisions of the option agreement.[1]

The escrow involving Parcel Number 1 closed March 2, 1956. February 11, 1958, Benjamin's attorneys sent a letter to Mrs. Fabares informing her of their client's intention to exercise

---

[1] "(a) The option to purchase said Parcel No. 2 may be exercised at any time within two (2) years after the close of the said Union Bank and Trust Company of Los Angeles Escrow No. 25581-KS; provided, however, that as a condition to the exercise of such option Optionee shall have paid in cash to Optionor on the purchase price of Parcel 1 hereinabove described the sum of at least Fifty-eight Thousand Five Hundred Dollars ($58,500.00). Written notice of election to exercise said option shall be given to Optionor at least ten (10) days prior to the expiration of said period of two (2) years by registered mail addressed to Optionor at 1754 North Taft Avenue, Los Angeles 28, California, or at such other address as shall have been furnished to Optionee by Optionor for the purpose of the giving of said notice. Within said period of two (2) years Optionee shall, either alone or in conjunction with Optionor, open a thirty (30) day escrow at Title Insurance and Trust Company, 433 South Spring Street, Los Angeles, California, and shall give to said escrow holder instructions covering the purchase by Optionee or his nominee or nominees of said Parcel No. 2 in accordance with the terms of this Option Agreement, and Optionee shall within said period of two (2) years deposit in said escrow the sum of $10,000.00 cash to apply upon the total purchase price of $130,000.00, and shall execute and deposit therein a note secured by purchase money first deed of trust for the balance of the purchase price of said parcel in the amount of $120,000.00, which said note shall be payable within two (2) years from the closing of such escrow, and shall carry interest at the rate of 5% per annum payable semi-annually on unpaid balance of principal. A full, true and correct copy of said note and deed of trust is attached hereto as Exhibit I and by reference made a part hereof as though fully set forth herein. . . .

"7. No options provided in this Option Agreement may be exercised by Optionee if there is any default in payments of either principal or interest due on any promissory notes or trust deeds given as a result of this Option Agreement, or in the escrow referred to in paragraph 1 above, and such default has been declared by ten (10) days notice in writing, which notice shall be sent to Optionee at 4843 Crenshaw Boulevard, Los Angeles 43, California, or at such address as may be hereafter furnished in writing to Optionor by Optionee. Such ten (10) day period shall commence upon the deposit of said notice in the United States mail, postage prepaid."

his option to purchase Parcel Number 2.[2] On February 24th, Benjamin paid the $101,799 due under the note, plus accrued interest, and opened a 30-day escrow for the purchase of Parcel Number 2, executing escrow instructions and depositing $10,000 in the escrow. The following day his attorneys notified Mrs. Fabares of the opening of the escrow and requested her to call at the escrow and execute escrow instructions, which she did not do. March 5th, Mrs. Fabares wrote Benjamin stating that his purported exercise of the option on February 11th was ineffective because of his failure to comply with the conditions precedent specified in the agreement and that since the option was not exercised in accordance with the agreement it was void on February 24th and thereafter. Mrs. Fabares also demanded from Benjamin a quitclaim deed which he declined to execute, and on March 24th Benjamin deposited in the escrow his note and deed of trust for the balance of the purchase price of Parcel Number 2.

---

[2]            ''February 11, 1958.

''Mrs. Lela Fabares
1754 North Taft Avenue
Los Angeles 28, California

''Dear Mrs. Fabares:

''Our client, Mr. Abe Benjamin, has requested that we give you the notice required under that certain Option Agreement of January 24, 1956, concerning his election to exercise the option to purchase Parcel No. 2 described in the mentioned agreement.

''Will you please take notice that Mr. Benjamin has elected to, and does hereby intend, to exercise his option to purchase Parcel No. 2 of said real property which is described as follows:

''The Northeast Quarter of the Northeast Quarter of Section 28, Township 7 North, Range 12 West, S.B.B. & M., in the County of Los Angeles, State of California, according to the official plat of the survey of said land on file in the Bureau of Land Management.

''Prior to March 1, 1958, Mr. Benjamin will open a thirty-day escrow with the Title Insurance and Trust Company, 433 South Spring Street, Los Angeles, California, give appropriate instructions covering his purchase of said real property and will deposit the sum of $10,000.00 in cash in said escrow, all in accordance with the provisions of said Option Agreement. Further, our client intends to and will comply with all of the terms and conditions of such agreement.

''This letter is intended to and does constitute the ten days' prior written notice required under paragraph 1 (a) of the Option Agreement of January 24, 1956, by our client, Mr. Benjamin, who is the Optionee thereof.

               ''Very truly yours,
               MALCOLM E. STEWART
               of VOORHEES, STEWART &
               VOORHEES

MES:GL
cc: Mr. Abe Benjamin, Esquire
   Raymond R. Hails, Esquire
REGISTERED MAIL, RRR.''

Mrs. Fabares then brought an action to quiet her title to Parcels Numbers 2 and 3, seeking also costs and attorneys' fees under a provision of the agreement that if Benjamin defaulted in exercising the option and refused on demand to execute a quitclaim deed, he would be liable for her costs and reasonable attorneys' fees in removing the cloud on her title. Benjamin brought suit for specific performance and in the alternative for damages for breach of contract, alleging that the failure of Mrs. Fabares to convey Parcel Number 2 was in bad faith and without just cause or excuse. The actions were consolidated for trial. Benjamin abandoned his count for specific performance at the trial. The court made findings and entered judgments quieting the title of Mrs. Fabares, but without ordering payment of her costs and attorneys' fees, and awarding Benjamin $75,366 damages for breach of contract. Mrs. Fabares appeals from the judgment in Benjamin's action and from that portion of the judgment in the quiet title action which denied a recovery of attorneys' fees and costs.

We shall first consider the appeal in Benjamin's action for damages. The court interpreted the agreement of the parties as requiring Benjamin to exercise his option by performing each of the following acts prior to March 2, 1958: paying $58,500 on the purchase price of Parcel Number 1; giving written notice of his intention to exercise the option; opening an escrow; depositing $10,000 in the escrow; and executing and depositing in the escrow his note and trust deed for the balance of the purchase price. The court found that Benjamin performed all but the last of these acts before March 2d, and as to the deposit of the note and trust deed, the court found that timely performance of that act was excused by appellant's conduct which amounted to a waiver of the requirement. The court also found that appellant acted in bad faith in repudiating the agreement on March 5th and there was included in the judgment $65,000 damages, representing the difference between $195,000, the reasonable value of the parcel on that date, and the purchase price of $130,000.

In urging a reversal of the judgment, appellant contends that Benjamin did not exercise his option according to the terms of the agreement, that there was no basis for the finding of waiver, and that the finding of bad faith is without support in the evidence. It is unnecessary for us to discuss the question of bad faith. We have concluded that Benjamin did not exercise his option as required by the agreement and that there was no waiver by Mrs. Fabares of her right to insist,

upon strict performance with respect to Benjamin's rights under the option.

The court based its construction of the option agreement exclusively upon the terms of the instrument. It is not now argued, and it was not argued at the trial, that the agreement was ambiguous, and no evidence was received as to any special meaning placed upon it by the parties. Under settled principles the interpretation adopted by the court is subject to independent review on appeal. (*Trubowitch* v. *Riverbank Canning Co.*, 30 Cal.2d 335 [182 P.2d 182].)

The merits of Fabares' appeal in Benjamin's action will be determined by answers to two questions, (1) was Benjamin required to pay at least $58,500 on account of the purchase price of Parcel 1 as a condition to his exercise of the option to purchase Parcel 2, and (2) if he had to meet that condition, did he meet it? The answer to the first question must be that he could not exercise the option until he had made the payment and to the second question, that he did not make the payment as required.

From our reading of 175 pages of briefs, we are able to state the positions of the parties as follows: Fabares contends that the terms of the option are clear, that time was of the essence of the agreement, exercise of the option could not be made until $58,500 had been paid, the attempted exercise of the option without making that payment was a nullity and Benjamin lost all right to purchase Parcel 2. Benjamin contends that he did not have to pay $58,500 as a condition to the exercise of the option; all he had to do was give notice of his exercise of the option, pay the balance of the purchase price, including the $58,500, and open an escrow within the two year period, and that he did all that was required of him. The court agreed with Benjamin's interpretation of the option agreement and found that Benjamin had properly exercised the option.

We have concluded that the court's interpretation of the agreement was erroneous.

The problem is as simple as this: B is indebted to A in a certain amount; A gives B an option to buy a property for $10,000 which provides that B may accept the offer only upon the strict condition that he shall first have paid $1,000 on account of the existing debt; B gives notice that he accepts the offer but fails to pay the $1,000 but subsequently pays the debt in full. May B, by tendering the agreed purchase price, compel A to convey the property? If it is the law that A

would have to convey the property the right of persons to make contracts upon their own terms would no longer exist.

By clear and unmistakable language payment of the $58,500 was made a condition precedent to Benjamin's exercise of the option. We ask: How could this all-important feature of the understanding of the parties have been more simply or forcefully expressed? Benjamin had a right to exercise the option by timely notice at any time within two years. By performance of that act mutual obligations to buy and to sell would have been crystalized. The clear agreement was that the $58,500 was to be paid separately, as a condition to exercise of the option, and not merely as partial payment for a deed to Parcel Number 1. The court's interpretation denies all meaning to the required prepayment of the $58,500. Under that interpretation all Benjamin had to do was deposit the amount of the note within two years and demand a deed. That is not the contract the parties entered into. It would be a new contract, giving Benjamin rights he did not possess and depriving Mrs. Fabares of vital rights which she did possess. Time was specifically made of the essence of the agreement. Mrs. Fabares had a right to demand strict performance upon Benjamin's part. The right to make lawful contracts upon terms that are mutually agreed to is a sacred right, to be respected and enforced by the courts. Benjamin having failed to make the partial payment provided for in the agreement, the letter of February 11th and his subsequent deposit of the balance of the purchase price in payment of the note and the opening of an escrow were ineffective as an exercise of the option. (*Callisch* v. *Farnham*, 83 Cal.App.2d 427 [188 P.2d 775] ; *Peebler* v. *Seawell*, 122 Cal.App.2d 503 [265 P.2d 109].)

As previously mentioned, the court found that Benjamin failed to deposit his note and trust deed for the purchase of Parcel 2 within the time specified in the option agreement but that Mrs. Fabares waived any right to take advantage of that default. This point is extensively argued in the briefs, Fabares contending that there was no evidence of waiver. A proper disposition of the appeal does not necessitate a decision as to the sufficiency of the evidence to prove a waiver with respect to deposit of the note and trust deed.

Benjamin also argues for application of the doctrine of estoppel contending that in some manner Mrs. Fabares waived strict performance of the conditions of the option. We do not find in his brief reference to any evidence which could furnish a basis for an argument that Fabares waived the condition

that $58,500 must have been paid before the option could be exercised. Benjamin's argument with respect to waiver and estoppel is addressed solely to the matter of the failure to deposit the note and trust deed within the required time. It could not be intended to have application to the failure to pay the $58,500. His position throughout has been that he was not required to make that payment. Moreover, as early as February 14th, Mrs. Fabares' attorneys wrote to Benjamin calling his attention to his default in the payment of interest, and with respect to Benjamin's further default the letter stated: ''Your attention is also called to sub-paragraph (a) of paragraph 1 of said option agreement, wherein it is provided that as a condition to exercise of the option on Parcel 2 'optionee shall have paid in cash to optionor on the purchase price of Parcel 1 hereinabove described the sum of at least Fifty-Eight Thousand Five Hundred Dollars ($58,000).' '' A copy of this letter was sent to Benjamin's attorneys. Thus, Fabares gave Benjamin fair warning that he would be expected to comply with the conditions of the agreement which governed his right to exercise the option. Benjamin gave no heed to this warning but stood upon his claim of a right to exercise the option without having made the payment. There is no merit in Benjamin's argument that Mrs. Fabares waived her right to insist upon strict performance of the option agreement by Benjamin.

### Fabares Appeal in the Quiet Title Action

The option agreement provided that if it should be recorded and if Benjamin should default in the exercise of the option he would forthwith give Fabares a quitclaim deed to the parcels affected and if he failed to do so he would be liable to Fabares ''for any and all costs including reasonable attorney's fees which optionor may be required to expend in order to remove such cloud upon her title to said lands.''

In rendering judgment quieting the title to Parcels 2 and 3, the court declined to award Mrs. Fabares any amount for costs or attorneys' fees.

In the quiet title action the court found that appellant had incurred an obligation of $5,500 for attorneys' fees in the two cases, that $2,000 represented the reasonable value of attorneys' fees in prosecuting the quiet title action and $3,500 was the value of the services in defending the damage action. It was also found that Mrs. Fabares had incurred an obligation of $1,100 to one Henning, an appraiser, whose services

were used in the trial and that plaintiff's costs in the quiet title action amounted to $54.

Appellant contends that she was entitled to recover the $5,500 as attorneys' fees, $1,100 as the cost of the appraiser's services and her costs of $54. We are of the opinion that she should have been awarded $2,000 as and for attorneys' fees and her costs of $54, but no more.

There was no evidence as to the value of the services of the attorneys in one case or the other. The issue was submitted to the court upon the evidence addressed to the other matters in issue. Upon this state of the record we deem the court's allocation of values to be conclusive.

No doubt there was an overlapping of the services of the attorneys in the preparation of the actions for trial. It must be assumed that the court took that fact into consideration. But it is clear that the court found that in addition to the services rendered to the time when Benjamin waived his claim to specific performance, counsel for Mrs. Fabares rendered services throughout the trial of the damage cause of action and that those services earned substantial additional compensation. If the $3,500 was found to have been earned largely for the trial of the cause of action for damages, which presumably was the case, we cannot disagree with that decision. Appellant would have us hold that the defense of that cause of action was a necessary part of her efforts to remove a cloud from her title, although the judgment quieting her title was a necessary consequence of Benjamin's abandonment of his claim for specific performance. We believe the court properly held that Benjamin was not obligated to pay attorneys' fees for services rendered in resisting the damage claim. It does not appear as a matter of law that the court awarded too little for the services of the attorneys in the action that was taken to clear the title or too much for the other services.

The parties submitted to the court the question of the allocation of attorneys' fees as between the two actions and it was competent for the court to make that evaluation of the services and an allocation without expert testimony. Benjamin concedes that if he failed to properly exercise his option he became liable for $2,000 as a reasonable amount to be allowed for those services. Assuredly, this court would not be justified in undertaking to make an allocation different from that of the trial court. Appellant was entitled to a judgment against Benjamin for $2,054.

As to the $1,100 Mrs. Fabares pleaded as a defense

to the count for specific performance that the consideration for the sale of Parcel 2 was inadequate and her counsel stated at the trial that he had directed the appraiser to prepare a valuation of the parcel as of the date of the agreement in order to prove that it was worth more at that time than Benjamin agreed to pay for it. It is argued that since preparation of a defense to the claim for specific performance was essential to clear appellant's title, the appraiser's fee was likewise an expense contemplated by the agreement. The argument cannot be maintained.

Benjamin was served with process in the quiet title suit on April 8, 1958, the date he brought his own action. The record does not disclose when the appraiser was employed. Presumably he was hired to assist in the defense of the claim for specific performance by giving evidence that the price Benjamin agreed to pay was inadequate. There was no evidence that he was employed or would have been employed or that his services were intended to be used in the quiet title action. In the absence of evidence on that point the court was not required to assume that the claimed inadequacy of the purchase price would have been relied upon as a ground for quieting the title of Mrs. Fabares. The burden was upon her to prove that the services of the appraiser were reasonably required in seeking a judgment removing the cloud from her title. Upon that issue the court properly determined that the services of the appraiser were engaged and were rendered in connection with the action brought by Benjamin and not the quiet title action.

In *Benjamin* v. *Fabares,* the judgment is reversed and the court is directed to enter judgment in favor of Mrs. Fabares. In *Fabares* v. *Benjamin,* the portion of the judgment appealed from is reversed and the court is directed to enter judgment in favor of Mrs. Fabares in the sum of $2,054.

Vallée, J. and Ford, J., concurred.

A petition for a rehearing was denied May 24, 1960, and respondent's petitions for a hearing by the Supreme Court were denied June 22, 1960.