AGEE, J.
 

 The Earles, husband and wife, were awarded $11,500 as damages against Lambert and were denied any recovery as against Dorward and his wife. This resulted in three appeals. Lambert appeals from the judgment against him. The Earles cross-appeal as to the adequacy of the award. They also appeal from the judgment in favor of the Dorwards.
 

 Lambert and Dorward are licensed real estate brokers. At
 
 the time in question,
 
 Dorward lived in Paso Robles but worked out of Lambert’s office in San Francisco as a salesman.
 
 *455
 
 Lambert met the Earles socially in 1950 and they became close friends. The Earles owned property on Clayton Street, in San Francisco. On May 23, 1952, they signed an agreement which gave Lambert an exclusive right to sell their property for $38,500.
 

 In July 1950, Lambert and Dorward had negotiated a five-year lease of a certain motel in Templeton, California, to one Blackwood and wife. The lease required the Blackwoods to deposit $3,000 for the last year’s rental and provided for an option to buy the property for $50,000, which, if exercised before August 1, 1952, allowed the deposit of $3,000 to be applied on the purchase price. Lambert and Dorward were to receive an additional commission if the option was exercised. The Blackwoods desired to exercise the option within the time limit, in order to salvage their deposit of $3,000.
 

 Lambert recommended to the Earles that they exchange their property for the motel. He told them that the motel could be acquired for $71,500 and that it was subject to $45,000 in encumbrances, leaving an equity of $26,500. Lambert suggested that the mortgage on the Clayton Street property be increased to $12,000, so that the equity therein would also be $26,500. Lambert prepared an exchange agreement, which the Earles signed on June 16, 1952. It recited that the Blackwoods were the owners of the motel and that it was subject to an encumbrance of approximately $45,000. It further recited that the Clayton Street property was subject to an encumbrance of $12,000.
 

 Lambert knew that Frances Palm and her daughter, Kathryn Hermann, were the owners of the motel and that they were willing to sell it for $50,000. He knew that the Black-woods were only the lessees and were very desirous of “bailing out” before August 1, 1952. Lambert did not disclose any of these facts to the Earles.
 

 Lambert opened an escrow in San Francisco for the transfer of the Earles’ property and a separate escrow in San Luis Obispo for the transfer of the motel from the true owners. In the motel escrow the price had to be stated as $50,000 because that was what the owners had agreed to sell for and they had to sign the escrow instructions and the deed. The Blackwoods, in the meantime, had refused to take over the Clayton Street property. Lambert thereupon arranged for the Dorwards to take title and, without the consent or knowledge of the Earles, caused the price of the property, as stated in the escrow instructions, to be reduced to $27,000, This breach
 
 *456
 
 by Lambert of Ms agreement with the Earles is the basis of the judgment against him.
 

 In the closing figures in the San Francisco escrow, the Earles were charged with a commission to Lambert of $1,925, or 5 per cent of $38,500. However, the rest of the accounting was on the basis of $27,000 as the sale price. The net credit to the Earles was therefore $11,500 less than they were entitled to if Lambert had not wrongfully, and without the knowledge of the Earles, reduced the valuation of their property from $38,500 to $27,000. This difference of $11,500 was the amount of damages allowed to the Earles as against Lambert.
 

 The Judgment Against Lambert
 

 The Earles testified that they had never authorized any sale or exchange of the Clayton Street property for less than $38,500; that they reposed trust and confidence in Lambert as their broker; that the reduction in valuation from $38,500 to $27,000 was without their knowledge or consent and that they first learned of this after the entire transaction had been effected and they were in possession of the motel; that they signed all papers presented to them by Lambert without reading them or examining their contents because of their trust and confidence in him. The trial court found that Lambert “falsely, fraudulently and with intent to defraud” the Earles had caused the escrow papers to indicate a sale price of $27,000, instead of $38,500, as agreed upon with the Earles, “leaving unaccounted for on the sale of said premises the sum of $11,500. ...” It cannot be seriously contended that such findings of fact are not supported by the evidence.
 

 The relationship between a broker and his principal is fiduciary in nature.
 
 (Bate
 
 v.
 
 Marsteller,
 
 175 Cal.App.2d 573, 580-581 [346 P.2d 903].) He must disclose to his principal all facts within his knowledge that are cogent to the sale and which might affect the principal’s willingness to sell.
 
 (Zikratch
 
 v.
 
 Stillwell,
 
 196 Cal.App.2d 535, 539 [16 Cal.Rptr. 660];
 
 Simone
 
 v.
 
 McKee,
 
 142 Cal.App.2d 307, 312 [298 P.2d 667].) The trial court expressly found that the Earles did not understand escrow matters but, reposing trust and confidence in Lambert, “signed all and every paper and document presented to them.” Any negligence of the Earles in this respect is not available to Lambert as a defense for his intentional misrepresentation that the property was being exchanged at a valuation of $38,500.
 
 (Seeger
 
 v.
 
 Odell,
 
 18 Cal.2d 409, 414-415 [115 P.2d 977,136 A.L.R. 1291].)
 

 After the Earles went into possession of the motel,
 
 *457
 
 they received copies of the closing statements in the two escrows and learned for the first time of the change in the respective sale prices. When they asked Lambert about this, he explained that it was done for the benefit of the Earles in order to reduce the title and escrow fees and for income-tax purposes. The Earles accepted this explanation because of their trust and confidence in Lambert. They remained in possession of the motel for 15 months, when they were ousted by foreclosure proceedings.
 

 Lambert contends that the conduct of the Earles, in remaining in possession of the motel after receiving said statements, constitutes a ratification of the exchange of their property at the reduced valuation of $27,000. But where the rights and obligations of third parties are not involved, and the controversy relates solely to whether a principal has exonerated an unauthorized act of an agent by ratification implied from conduct, such intention to confirm must rest on unequivocal evidence, and must be manifested by acts inconsistent with any other hypothesis.
 
 (Gates
 
 v.
 
 Bank of America,
 
 120 Cal.App.2d 571, 577 [261 P.2d 545].) The evidence in the instant ease is consistent, not with ratification of Lambert’s conduct, but rather with perpetuation by Lambert of the fraud for which he was held liable. The trial court called attention in its “Memorandum Opinion” to the fraud practiced by Lambert and his explanation to the Earles of the reduced valuation and stated: “Even if the Earles temporarily were satisfied with their purchase once they had got into Templeton [motel] I do not believe that they ratified the reduction of the price at Clayton Street.”
 

 It is not necessary to expressly plead ratification as a defense and it was an issue considered and determined, as evidenced in the “Memorandum Opinion.” The trial court did not abuse its discretion in denying Lambert’s motion, made after the conclusion of the testimony, to amend the pleadings to conform to the proof with respect to the defense of ratification and estoppel.
 
 (Adler
 
 v.
 
 Blair,
 
 169 Cal.App.2d 92, 96-97 [336 P.2d 971].)
 

 Amount of Damages
 

 Lambert contends that the Clayton Street property was not worth more than $27,000 and that, even though unauthorized, his act in reducing its valuation to that figure therefore did not result in any damage to the Earles.
 

 This contention misses the point. The Earles had a right
 
 *458
 
 to place any valuation on their property that they chose. The written agreement of May 23, 1952, gave Lambert, as the agent for the Earles, the “exclusive right and power” to sell the property “for the price of $38,500.” It gave him no right or authorization to reduce that price without the consent of the Earles. It was a breach of his obligation for him to do so, and the damages were properly fixed as the difference between the amount for which the Earles had agreed to sell and the amount for which, through the fraud which the trial court found was practiced upon the Earles by Lambert, the property was actually sold to Dor ward.
 

 As to the motel, the Earles had accepted a valuation of $71,500 on the advice and recommendation of Lambert. This figure was reduced to $50,000 in the escrow instructions signed by the owners and the sale was made on this basis. Lambert points out that this reduction of $21,500 more than offsets any damages sustained by the Earles as the result of his alleged wrongful reduction in the valuation of the Clayton Street property.
 

 However, Lambert was obligated as the broker for the Earles to see to it that the owners of the motel conveyed it at the price agreed upon in the option, and he is not entitled to any credit or offset for doing so.
 

 Lambert’s failure to disclose the financial aspects of the motel transfer did not result in any injury to the Earles because the sale went through at a valuation of $50,000 and the trial court therefore properly made no finding of actionable fraud in this respect.
 

 The trial court made findings favorable to Lambert and Dorward as to various other misrepresentations alleged to have been made in reference to the motel and exonerated both from any liability arising out of this half of the exchange. The evidence supports such findings and conclusion.
 

 As to the part of the transaction involving the Clayton Street property, the trial court denied any recovery except for the damages arising from Lambert’s fraudulent reduction of the valuation agreed upon in his agreement with the Earles. As stated in
 
 Zikratch
 
 v.
 
 Stillwell, supra,
 
 at page 543, the concern of a court in assessing damages is “how much will be needed to compensate plaintiffs for the damage they suffered.” The trial court, by the Honorable Preston Devine, in a very careful and detailed analysis of the evidence and the issues, was of the opinion that the amount needed to compensate the Earles for the fraud practiced by Lambert is the
 
 *459
 
 difference between the sum that should have been credited to the Earles for the transfer of their property and the amount which actually was credited.
 

 We agree that the amount awarded was fair and adequate and that it was not error to disallow the other items claimed by the Earles, such as loss of wages resulting from being made “ill and mentally and physically upset.” The court also made a finding that Lambert did not act maliciously and refused to award exemplary damages.
 

 The Dobward Judgment
 

 The trial court confined its finding as to actionable fraud to the conduct of Lambert. Its conclusions of law provide that the Dorwards are entitled to a judgment against the Earles for costs. The judgment expressly includes such provision.
 

 While the findings of fact should have been made as to all of the allegations of fraudulent conduct by Dorward, we find that the Earles have suffered no prejudice by reason of the failure to do so. This is clear from the conclusions and the judgment and is made even more so in the trial court’s “Memorandum Opinion,” which completely exonerates Dorward from any fraudulent conduct. The evidence fully supports this conclusion. As we have stated, the only actionable fraud found by the lower court was the unauthorized reduction of the valuation of the Clayton Street property and this was done by Lambert, not Dorward.
 

 An express finding upon this issue as to Dorward would necessarily be in his favor and the failure to make such finding does not require the setting aside of the judgment as to him.
 
 (Byron Jackson Iron Works
 
 v.
 
 Hoge,
 
 49 Cal.App. 700 [194 P. 45]; Cal. Const., art. VI, §
 
 4½.)
 

 The judgment is affirmed. Costs on the appeal of Lambert from the judgment against him are awarded to the Earles and against Lambert; costs on the appeal of the Earles from the judgment in favor of the Dorwards are awarded to the Dorwards and against the Earles; costs on the cross-appeal of the Earles are awarded to Lambert and against the Earles.
 

 Kaufman, P. J., and Shoemaker, J., concurred.
 

 A petition for a rehearing was denied July 25, 1962, and the petition of plaintiffs and appellants for a hearing by the Supreme Court was denied August 29, 1962,